Dawn SIEVERS, as Personal Represent-
ative of the Estate of Albert John
Sievers, (Deceased), Appellant,

v.

Grant McCLURE, Individually and
d/b/a Gemco Competitive
Construction, Appellee.

No. S–1577.

Supreme Court of Alaska.

Dec. 4, 1987.

Jeffrey M. Feldman and Stuart A. Ollanik, Gilmore & Feldman, Anchorage, and Jeffrey D. Jefferson, Nordstrom, Steele & Jefferson, Kenai, for appellant.

John W. Pletcher, III, Pletcher & Slaybaugh, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### FACTS AND PROCEEDINGS

During the fall of 1982 the appellee, Grant McClure, doing business as Gemco Competitive Construction (Gemco), was in the process of constructing a four-plex on property owned by Grant and Dea McClure. Gemco hired Hanson Roofing Company (Hanson) to install a roof on the building. Hanson was an experienced roofer of good reputation who had completed eight other roofing projects for Gemco, always working alone. On this occasion, however, Hanson hired Albert Sievers, a 54 year old retired automobile assembly line worker, to help him with the project. Sievers had worked for Hanson on two previous occasions, only one of which required him to get onto a roof.

On the day of the accident a freezing rain coated the roof of the four-plex with a thin layer of ice. Hanson asked Sievers to stand on the roof and thaw the ice from it with a propane torch in order to prepare its surface for the application of asphalt shingles. No motion stopping devices were in place on the pitched roof to protect Sievers from falling, although Hanson told Sievers to grab onto the propane hose, which had been tied to the roof, if he started to slip on the ice. While thawing ice pursuant to Hanson's directions, Sievers slipped, let go of the hose, and fell to his death. An official from the Alaska Department of Labor, Division of Labor Standards and Safety, later concluded that the accident would not have occurred if Hanson had installed one of the standard motion stopping devices required by state law on this project.[1]

Sievers' recovery from Hanson was limited to the benefits provided by the Alaska Workers' Compensation system. The representative of Sievers' estate filed a wrongful death action against Gemco seeking additional compensation, alleging that Gemco had a duty, as a general contractor, to ensure that proper safety devices were installed at the worksite. The representative also alleged that Gemco was negligent in its selection and hiring of an independent contractor who operated without the necessary safety devices. The superior court rejected both theories of recovery and dismissed the claims on a motion for summary judgment. Sievers appeals.

### DISCUSSION

I. *General Contractor's Liability for Peculiar Risks of Harm*

Sievers' first theory of recovery is based on the Restatement (Second) of Torts section 413, which provides:

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a *peculiar unreasonable risk of physical harm* to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

---

1. Alaska Occupational Safety and Health Standard 05.240(d)(1) required the use of a motion stopping safety system by persons working on roofs 16 feet or more above the ground. Acceptable systems included a toeboard with rope rails or a safety belt. *See* Alaska Occupational Safety and Health Standard 05.240(h)(5), 8 AAC 61.010.

(Emphasis added). We adopted section 413 as the standard of care in *Moloso v. State*, 644 P.2d 205, 214–15 (Alaska 1982), holding that one who hires an independent contractor to perform work involving a "peculiar risk of harm" must ensure that appropriate safety precautions are taken to protect the contractor and his employees from such harm.[2] Although we did not define "peculiar risk of harm" in *Moloso*, our decision indicated that peculiar risk could be found where the contracted work involved an unusual hazard of which the contractor was unaware. In that case the state hired an independent contractor to excavate a particularly unstable portion of land for a highway project. Heavily fractured rock structures rendered the project one of the most difficult ever undertaken by the state. 644 P.2d at 209, 215. Unaware of the unusual geology of the area, the contractor applied the standard excavation safety procedures, which proved insufficient to prevent the unstable land from sliding. *Id.* at 210. We concluded that the state might be held liable for the resulting deaths of two employees, stating that reasonable minds could differ as to whether the state failed to take special precautions against a "peculiar risk of harm" of which it was aware. We remanded the case for trial. *Id.* at 216.

In the present case Sievers seeks to extend the scope of the peculiar risk for which an employer is liable. She argues that hazards which are ordinarily encountered in the independent contractor's line of work may also constitute a peculiar risk of harm. Sievers does not propose a single concise definition of peculiar risk in her appellate brief, but the gist of her reasoning indicates that she views a peculiar risk

to be any risk that is inherent in (and therefore "peculiar" to) the type of work to be performed by the contractor. Her interpretation is supported by Restatement section 413, comment b, which provides in part:

"Peculiar" does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.

Gemco objects to Sievers' definition, arguing that a peculiar risk must be one that is abnormal or not usually present in the contractor's line of work. It cites to another part of comment b in support of its definition.

[Section 413] is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor....

Gemco contends that ice and inclement weather are frequently encountered in Alaska, and it argues that the risk of falling off an ice-laden roof is a routine risk which any careful contractor in Alaska could reasonably be expected to take precautions against.

The superior court found that "[t]he contradictory and ambiguous language of the comment mirrors the uncertainty of the law in this area. In reality the courts may seize on the language of the comment to justify either a broad or narrow construction of Section 413." We agree. Since the

---

2. Gemco contends that the contractor's employees are not "others" to whom the employer owes a duty of care. A split of authority exists as to the meaning of the words "others" in § 413 of the Restatement. Several courts have found that the phrase creates a duty towards third parties only. *See, e.g., Nelson v. United States*, 639 F.2d 469, 471–77 (9th Cir.1980); *Welker v. Kennecott Copper Co.*, 1 Ariz.App. 395, 403 P.2d 330, 335–59 (1965). Other jurisdictions have held that the employees of an independent contractor fall within the definition of "others." *E.g., McGarry v. United States*, 549 F.2d 587, 590–91 (9th Cir.1976), *cert. denied*, 434 U.S. 922,

98 S.Ct. 398, 54 L.Ed.2d 279 (1977) (Nevada law); *Lindler v. District of Columbia*, 502 F.2d 495, 498–99 (D.C.Cir.1974) (District of Columbia law); *Woolen v. Aerojet General Corp.*, 57 Cal.2d 407, 20 Cal.Rptr. 12, 15, 369 P.2d 708, 711 (1962); *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824, 834 (1967). We have previously said that the latter view is the better reasoned approach insofar as § 413 embodies a rule of personal rather than vicarious liability. *Moloso*, 644 P.2d at 215 (Alaska 1982). *Compare Sloan v. Atlantic Richfield Co.*, 552 P.2d 157, 160 (Alaska 1976) (employer not liable to contractor's employee vicariously). We adhere to this view.

Restatement does not clearly delineate the scope of a peculiar risk within the meaning of section 413, we must look to other authorities for guidance.

Sievers relies on a long line of California cases which hold the employer of an independent contractor liable for so-called "peculiar risks" which arise out of the nature of the contractor's work or the place where it is to be done. *E.g., Aceves v. Regal Pale Brewing Co.,* 24 Cal.3d 502, 156 Cal.Rptr. 41, 43–45, 595 P.2d 619, 621–23 (1979) (employer liable for contractor's operation of bulldozer without warning devices in an area where persons are working); *Griesel v. Dart Industries, Inc.,* 23 Cal.3d 578, 153 Cal.Rptr. 213, 217–18, 591 P.2d 503, 507–08 (1979) (employer liable for trench collapse resulting from failure to shore up land). In these cases the primary reason for imposing broad liability on the employer of a contractor rests on theories of risk shifting. "It is common knowledge that workmen injured or killed in construction work do not receive full compensation [from the independent contractor] under the Workmen's Compensation Act for damages that they sustain...." *Widman v. Rossmoor Sanitation, Inc.,* 19 Cal.App.3d 734, 97 Cal. Rptr. 52, 58 (1971). Ordinarily the injured worker would bear this risk of loss himself. California courts have shifted that loss away from the worker and onto the party who employed the independent contractor, reasoning that the party who reaps the benefit of another's dangerous work should pay the actual cost of human injury that the work entailed. *Aceves,* 156 Cal.Rptr. at 44, 595 P.2d at 622; *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 25, 437 P.2d 508, 513 (1968). These courts add that the general contractor is usually in a better position than the injured employee to absorb and reallocate the cost of any injuries that occur as a result of the inherently dangerous nature of the work. The employer can purchase insurance and distribute the cost of the premiums to the public in the form of increased prices for the finished project, *Van Arsdale,* 66 Cal. Rptr. at 25, 437 P.2d at 513; Note, *Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work: A Workable Workers' Compensation Proposal,* 48 Fordham L.Rev. 1165, 1174 (1979–80), while the worker would have to bear the cost of personal accident insurance premiums himself.

Although the goal of full compensation for construction-related injuries is a worthy one, we do not believe that this goal, in itself, provides just reason to impose liability on the employer. We believe that responsibility for risks routinely encountered in the independent contractor's line of work properly rests with the contractor, not the employer, unless the parties otherwise agree.[3]

Our decision is founded in part upon the nature of the independent contractor relationship. An employee is subject to his master's direction and control, but an independent contractor ordinarily enjoys full control over the manner in which he performs his work, unless the parties otherwise agree. *E.g., Societa per Azioni v. City of Los Angeles,* 31 Cal.3d 446, 183 Cal.Rptr. 51, 57, 645 P.2d 102, 108 (1982) ("[i]n determining whether a person is an employee or an independent contractor, the most important factor is the right to control the manner and means by which the work is to be performed"); *Larner v. Torgerson Corp.,* 93 Wash.2d 801, 613 P.2d

**3.** Several jurisdictions have reached a similar conclusion under Restatement (Second) of Torts § 416, which holds the employer vicariously liable when the contractor fails to take precautions against "a peculiar risk of physical harm." *See Johns v. New York Blower Co.,* 442 N.E.2d 382, 385–86 (Ind.App.1982) (working on steel beam 30 feet above ground is not an inherently dangerous activity for which employer is liable, since the danger could be eliminated or significantly reduced by the contractor's use of safety lines); *Bosak v. Hutchinson,* 422 Mich. 712, 375 N.W.2d 333, 340–41 (1985) (construction of crane was a fairly routine job and did not create a peculiar risk for which employer was liable. Risk arose when contractor chose to work at night without adequate lighting); *Kemp v. Bechtel Const. Co.,* 720 P.2d 270, 274–75 (Mont.1986) (risk arising out of contractor's failure to use standard precautions to shore up trench is not a peculiar risk for which employer is liable); *Peterson v. City of Golden Valley,* 308 N.W.2d 550, 554 (N.D.1981) (trench excavation presents no peculiar risk of harm so long as it is done with the standard precautions).

780, 782 (1980); Restatement (Second) of Agency § 220(2) (1958). *Compare Hammond v. Bechtel, Inc.*, 606 P.2d 1269 (Alaska 1980) (employer may explicitly contract to retain active control over safety procedures used by an independent contractor). In the absence of such an agreement, the employer may reasonably assume that a competent contractor will provide for all hazards that routinely arise in the contractor's line of work as a necessary incident of performing his contract.[4]

■ A competent contractor is familiar with the usual hazards incident to the performance of his line of work, and is therefore in a good position to select safety procedures to minimize the risks. Every person who hires an independent contractor cannot be expected to acquire the same level of knowledge in order to become adequately versed with the best safety procedures for the job. Without such knowledge, the employer cannot significantly add to the safety of the workplace. "[T]here is no reason to suppose [employer liability for routine safety hazards] would result in a safety benefit to workers in those cases where the contractor is as able, if not more so, than the owner to anticipate safety problems and to enforce appropriate safety programs." *Nelson v. United States*, 639 F.2d 469, 478 (9th Cir.1980). Indeed, it would be undesirable for an employer who knew little about the work to dictate the safety procedures and devices that the contractor must use. An uninformed choice would not make the worksite a safer place.[5]

■ Even if the employer possessed the ability to select appropriate safety procedures for the routine aspects of the contracted work, it would often be unreasonably burdensome to require him to do so. We agree with the superior court, which concluded:

> Section 413 is an exception to the general non-liability of the employer of an independent contractor stated in Section 409. Unless the exception is to absorb the general rule, its application must be limited. It *must be limited so that general contractors will not, in almost every conceivable case, have to step in and make themselves conversant with all activities of their independent contractors....* Where a routine precaution could reasonably be expected to prevent injury or death, the general contractor/owner will not be liable under Section 413.

(emphasis added).[6] Every construction project has some inherent dangers for which routine precautions are necessary. The employer should not be compelled to become familiar with the routine aspects of the contractor's work and safety practices, when the contractor is already aware of the hazards and is in a better position to take preventative action by, for example, providing safety training to employees, installing

---

4. *See Lunde v. Winnebago Industries, Inc.*, 299 N.W.2d 473, 478 (Iowa 1980) (construction work at a height of twenty-five feet involves customary danger of falling, for which employer could reasonably expect any careful contractor to take the necessary precautions); *Clausen v. R.W. Gilbert Constr. Co.*, 309 N.W.2d 462, 465, 467 (Iowa 1981) (any careful roofing contractor could reasonably be expected to take precautions against falls caused by gusts of wind, frost, and wet slippery roof surfaces).

5. We are not faced with a situation where the employer has superior knowledge of the dangers or is in the best position to identify the precautions that are necessary to safely perform the job. In such a case there may be a foreseeable danger to human safety if the employer does not act upon such knowledge to protect the contractor and his worker. *Cf. Wilson v. Good Humor Corp.*, 757 F.2d 1293, 1301 (D.C.Cir. 1985):

> The general rule [of non-liability] encompasses the notion that employers should not be held responsible for activities they do not control and, in many instances, lack the knowledge and resources to direct.... The exceptions, in the main, reflect special situations where the employer is in the best position to identify, minimize and administer the risks involved in the contractor's activities. (Citations omitted).

6. The general rule is that a person who employs an independent contractor cannot be held vicariously liable for the contractor's acts or omissions, although the employer remains at all times liable for the consequences of his own negligent conduct. *Sloan*, 552 P.2d at 160–61 (Alaska 1976); Restatement (Second) of Torts § 409.

routine safety equipment as it becomes necessary, supervising a safety program during the course of the contracted work, and disciplining or discharging employees who engage in unsafe practices.

For these reasons we reject the interpretation of section 413 contained in the second paragraph of comment b, which states that a "peculiar" risk need not be an abnormal risk. Instead we conclude that the person who employs an independent contractor may be held responsible only for risks that are not routinely encountered in the contractor's line of work. In this manner the employer will assume liability for those hazards which the independent contractor is unlikely to be aware of and therefore unable to protect against.

When we apply this definition to the facts of this case, it is apparent that summary judgment was properly granted. The risk of harm which Sievers encountered was the risk that all roofers routinely face—the danger of falling off a sloped roof during its construction or repair. The presence of ice on the roof does not make the risk a peculiar one, as there is nothing abnormal about ice in Alaska in November. Indeed, the risk of falling from a roofing surface made slippery by ice, rain, oil, or loose materials is a risk with which the roofer must be prepared to deal every day. Because no reasonable mind could find that the risk of falling from a sloped roof was abnormal to a contract to install a roof, Gemco could not be held responsible for the fall which led to Sievers' death.[7] The trial court properly dismissed all claims against Gemco based on a peculiar risk theory.

II. *Liability for the Negligent Selection and Hiring of an Independent Contractor*

In the alternative, Sievers seeks to hold Gemco liable for failing to exercise the care needed to select a roofing contractor who would perform his contract with the proper safety devices. She asks us to adopt sec-

tion 411 of the Restatement (Second) of Torts, which provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

In its motion for summary judgment, Gemco claimed that the contractor's employees were not "third persons" to whom a duty was owed. The superior court agreed, stating that a duty was precluded by the reasoning of *Matanuska Elec. Assoc., Inc. v. Johnson*, 386 P.2d 698 (Alaska 1963). That opinion discussed the employee's ability to protect himself from the independent contractor's negligence:

> The concept that all employers should be able to judge the skill, experience, knowledge, adequacy of equipment, and, as now suggested by appellee, the financial responsibility possessed by independent contractors, is based on unreality to a great extent.... Some experienced employers of contractors have the ability to weigh the technical factors of skill, experience and adequacy of the equipment possessed by contractors under consideration. Probably most do not. The average employer hiring a contractor to construct, repair, move or demolish a residence, for example, will not be qualified to judge of his skill, experience or the adequacy of his equipment....
>
> *This disparity is emphasized where it is the contractor's employee who seeks to hold the employer liable for employing an incompetent contractor. It would seem that the average contractor's employee would be at least as capable, if not more capable, than the average employer, of determining whether the contractor for whom he*

---

7. Gemco and Hanson allegedly had an understanding whereby Hanson agreed to be responsible for all safety procedures required in the performance of his work for Gemco. If proven, this understanding would further support the need to place responsibility for all routine safety procedures on Hanson rather than on Gemco.

*works has the necessary skill, experience and adequate equipment to perform the work.*

*Id.* at 703–04 (emphasis added).

Although this language suggests that section 411 duties do not run to the employees of the incompetent contractor, that was not the holding of *Matanuska Electric.* The holding was that the independent contractor was not an incompetent contractor merely because he did not carry worker's compensation insurance. The language relied on by the superior court was thus dicta.

Language contained in our more recent opinion of *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157 (Alaska 1976) suggests a different conclusion. In *Sloan* we wrote that "[i]n general, we adhere to the rule that the owner of premises or the general contractor thereon owes to the servants of its independent contractor the duty to avoid endangering the employee by his own negligence or affirmative act, but owes no duty to protect the employee from the negligence of the [independent contractor]...." *Id.* at 160. We applied this principle in *Moloso,* holding that the employer's personal duty to protect "others" from peculiar harm ran to the employees of its independent contractor. 644 P.2d at 215.

■ Taken together, these cases make the resolution of the present issue relatively clear. The rule of section 411 of the Restatement is a rule of personal negligence. Restatement (Second) of Torts, topic 1, introductory note, at 371. It is therefore consistent with *Moloso* and *Sloan* to hold that the employer's duty to act reasonably in hiring a competent contractor runs to the employees of the contractor. Such a rule is not unduly burdensome, as in most cases it requires no additional effort from an employer who must act reasonably in the selection process in any event in order to protect third parties from harm. Moreover, the rule may tend to further the goal of industrial safety by discouraging the employment of contractors notorious for cutting costs at the expense of their employees' health and safety.

■ The next question is the reasonable scope of the employer's duty of care under section 411. Sievers would require the employer to inquire into each of the contractor's safety practices before hiring. Because Gemco failed to examine Hanson's safety procedures before hiring him, she would hold Gemco liable for injuries caused by Hanson's failure to use proper safety devices.

We reject Sievers' proposal as unnecessarily burdensome and infeasible. Most employers lack the knowledge needed to evaluate a contractor's safety practices. Moreover, it is unreasonable to expect the employer to make specific inquiries into the many details of the projects, and the safety procedures for each, when the employer has been reasonably assured of the contractor's general reputation for, and past history of, safety and competent work. Indeed, as the commentary to the Restatement suggests, when the character of the work is not complex, "there is no duty to take any great pains to ascertain whether [the contractor's] reputation is or is not good. The fact that he is a carpenter or plumber [or, appropriate to this case, a roofer] is sufficient, unless the employer knows that the contractor's reputation is bad or knows of facts which should lead him to realize that the contractor is not competent." Restatement § 411, comment c, at 379.

■ In this case it is undisputed that Hanson had a good reputation. He was a licensed and bonded contractor with fourteen years of experience and no prior serious accidents. He had performed eight earlier projects for Gemco without complaint. Under the circumstances Gemco was entitled to rely on Hanson's general reputation and past history of competence when it selected him to install the roof on this project.

The judgment of the superior court, dismissing Sievers' claims pursuant to Alaska Rule of Civil Procedure 56(c), is AFFIRMED.