**MATOMCO OIL COMPANY, INC., Appellant,**

v.

**ARCTIC MECHANICAL, INC., George Wise, Alliance Insurance Company, and Underwriters at Lloyds, Appellees.**

No. S–2773.

Supreme Court of Alaska.

July 13, 1990.

As Amended on Denial of Rehearing
Aug. 30, 1990.

Scott L. Taylor, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

William R. Satterberg, Jr., Fairbanks, for appellees Arctic Mechanical, Inc. and George Wise.

Richard A. Weinig, Pletcher, Weinig, Lottridge & Moser, Anchorage, for appellee Alliance Ins. Co.

Kenneth R. Lamb, Anchorage, for appellee Underwriters at Lloyds.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

## OPINION

### I. INTRODUCTION.

Matomco appeals the superior court's judgment, based on a general jury verdict, in favor of Arctic Mechanical, Inc., George Wise, Alliance Insurance Company, and Underwriters at Lloyds. Matomco had employed an independent contractor (David Campbell) to repair Matomco's fuel tanker. During the repair the tanker exploded, killing David Campbell and causing appellees' damages. Appellees sued both Campbell's estate and Matomco, but settled with the estate before trial. At trial, appellees claimed that Matomco was liable on multiple theories of negligence and absolute liability. The jury returned a verdict against Matomco, but did not specify which of the several theories of negligence and absolute liability it relied upon in imposing liability. Matomco contends that it cannot be held liable under any of the legal theories presented to the jury. Matomco also asserts that the superior court committed evidentiary errors that compel reversal; that appellees failed to prove their damages; and that the superior court erroneously refused to enter judgment in Matomco's favor. We reverse and remand for a new trial.

### II. FACTS AND PROCEEDINGS.

This appeal arises out of the explosion of a fuel tanker owned by Matomco. The relevant preceding events are described by Matomco in its brief:

On October 8, 1983, Matomco Oil Company, Inc. (Matomco) delivered a 1975 Fruehauf multi-compartment trailer to C & S Welding for the repair of a crack on the right front side of the tanker. Previously, the tanker had been used by Matomco in its fuel delivery business. Matomco's business included the delivery of diesel fuel, gasoline and JP4 aviation fuel. The crack which developed in the tanker was discovered while the tanker was being used to haul JP4 to Prudhoe Bay. After discovering the leak, the Matomco driver transferred the jet fuel from the Matomco tanker into an empty southbound tanker owned by Big State Equipment. The Matomco driver then continued north with the Big State tanker, and the Big State driver brought the Matomco tanker back to Fairbanks and parked it in Big State's yard, where [Matomco's] John Hendricks picked it up.

After inspecting the tanker, Hendricks took the tanker to C & S Welding.

The explosion occurred when David Campbell of C & S Welding (C & S) was buffing the tanker as a preparatory step to repairing the leak. At that time, the tanker was inside a building owned by George Wise. The building was occupied by two tenants: C & S, and Wise's business, Arctic Mechanical, Inc. (Arctic). The explosion killed David Campbell and destroyed all of the building's contents, including Arctic's tools, equipment, and inventory, and a Peterbilt tractor owned by Clyde Sutton, which was located in C & S's work area. Wise and Arctic had insured the building and Arctic's inventory with Alliance Insurance Company (Alliance). Sutton's tractor was insured by Underwriters at Lloyds (Lloyds). Alliance paid Wise and Arctic $272,309 based on a proof of loss supplied by Wise. Lloyds paid Sutton $65,000 as compensation for the loss of the tractor.

Wise and Arctic filed suit against David Campbell and C & S, claiming damages in the amount of approximately $700,000. Numerous interpleader plaintiffs, including Alliance and Lloyds, joined suit. The complaint was subsequently amended to add Matomco as a defendant. Thereafter all plaintiffs submitted their claims to a court-appointed master empowered to settle claims against Campbell's estate and C & S. The claims approved by the master totalled $900,168, but only $320,639 was available for payment from both C & S and Campbell's estate. All plaintiffs settled with Campbell and C & S in return for their pro rata share of this amount. Wise and Arctic's portion of this amount was $249,817. Wise and Arctic sought to recover their remaining damages from Matomco in this action. Alliance and Lloyds proceeded to trial as subrogated insurers.

After a month-long trial in which Lloyds' damages were stipulated, the jury returned two verdicts. In its first verdict the jury found that Matomco was liable to Wise and Arctic, that Wise and Arctic's damages were $441,000, and that Wise and Arctic were not comparatively negligent. The second verdict found Matomco liable to Lloyds. The superior court subsequently entered separate final judgments for Wise and Arctic, Alliance and Lloyds. Matomco brings this appeal.

## III. DISCUSSION.

### A. *Matomco's Liability for Negligent Misrepresentation.*

Although not clearly articulated, we read Matomco's briefs as asserting that the superior court erred in not granting Matomco's motion for a directed verdict as to appellees' negligent misrepresentation claim. In reviewing the denial of a motion for directed verdict we must take that view of the evidence which is most favorable to appellees, and ask whether a reasonable jury might have reached the result the jury did in this case.[1] Given this standard of review, our analysis of the record leads us to conclude that the superior court did not err in denying the motion for a directed verdict.

When Matomco's John Hendricks delivered the tanker to C & S, Hendricks informed both David and Donald Campbell

**1.** *Mullen v. Christiansen,* 642 P.2d 1345 (Alaska 1982); *Beaumaster v. Crondall,* 576 P.2d 988 (Alaska 1978); *Martinez v. Bullock,* 535 P.2d 1200 (Alaska 1975).

(David's father) that the tanker had last contained diesel.[2] In fact, the tanker's last load had been JP–4. JP–4 is more volatile than, yet similar in appearance to, diesel.[3] Appellees assert that Hendricks' statement constitutes negligent misrepresentation on the part of Matomco.

We agree. In these circumstances, Matomco owed any person likely to be within Wise's building a duty not to misinform David Campbell regarding the nature of Campbell's danger. Matomco's duty extended to appellee's pecuniary interests insofar as property damage, like personal injury, could be foreseen.[4] We conclude that the jury may have reasonably determined that Matomco breached its duty to appellees (or their insureds), and that David Campbell's reliance upon Matomco's material misrepresentation was foreseeable, reasonable, and catastrophic.

B. *Matomco's Liability Under the Doctrine of Negligence Per Se for Allegedly Violating a Federal Regulation Concerning Placarding of Fuel Tankers.*

■ Matomco argues that as a matter of law it cannot be held liable under the doctrine of negligence per se for violating 49 C.F.R. § 172.516. This federal regulation provides that a fuel tanker must display visible placards disclosing the contents of the tanker.

In *Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971), we adopted the four-part test found in § 286 of the Restatement (Second) of Torts to determine whether a statute or regulation may be used to determine the applicable standard of care.

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*Ferrell*, 484 P.2d at 263. We held that, if applicable, a violation of such a regulation was negligence per se. *Id.* at 264.

We agree with appellees that the *Ferrell v. Baxter* four-part test was met as to this regulation. The regulation was promulgated pursuant to a congressional policy "to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." 49 U.S.C.App. § 1801 et seq. Accordingly, (1) the regulation was designed to protect the public, a class of persons which includes appellees; (2) the regulation was designed to protect against loss of property, the interest of appellees that was invaded; (3) the regulation was designed to protect property from being destroyed by explosion of hazardous materials in or affecting interstate commerce;[5] and (4) the regulation was designed to prevent the destruction of property from explosion resulting from confusion as to what the actual contents of the tank-

---

**2.** Donald Campbell testified "I don't remember the driver's name. Then we went out and looked at it and checked if it had any fuel in it, which it didn't. And asked the driver if it had—what it hauled, and the man said diesel."

**3.** Donald Campbell testified that JP–4 is similar to diesel in color (none), odor, and texture. Donald Campbell, Neal Haun, Harold Gilbertson, and William Rogge testified that welders would exercise greater care in welding a tanker that had last contained JP–4 rather than diesel.

**4.** *See, e.g., Stephens v. State, Department of Revenue,* 746 P.2d 908, 910–11 (Alaska 1987) (defin-

ing duty). Imposition of a duty of care upon Matomco in this context is consistent with our holding in part III.E. of this opinion that the welding, buffing, or grinding of a petroleum tanker is not an ultrahazardous activity, but can be made safe by the exercise of utmost care.

**5.** 49 U.S.C.App. § 1802 defines "commerce" to include "transportation, within the jurisdiction of the United States, ... which affects trade, traffic, commerce or transportation" "between a place in a State and any place outside of such State."

er were.[6] We therefore conclude that Matomco's arguments to the effect that the regulation may not be used to determine the applicable standard of care lack merit.

### C. *Matomco's Liability Under the Doctrine of Negligence Per Se for Allegedly Violating an AOSHA Regulation.*

■ Appellees further assert that Matomco is liable for C & S's alleged violation of § 01.1002(d)(3) of the General Safety Code,[7] adopted by reference in 8 AAC 61.010. An employer is in general not liable, however, for the negligence of its independent contractors. *Parker Drilling Co. v. O'Neill,* 674 P.2d 770, 775 (Alaska 1983). Because the relevant instruction [8] failed to incorporate any exception to this general rule, either by reference, cross-reference, or logical procession, we conclude that this instruction was erroneous.

### D. *Matomco's Liability for the Negligence of its Independent Contractor.*

■ Nevertheless, the superior court did not err in denying Matomco's motion for a directed verdict that Matomco was not liable for the acts of its independent contractor. *Sievers v. McClure,* 746 P.2d 885 (Alaska 1987), held in relevant part that the person who employs an independent contractor may be held responsible only for risks that are not routinely encountered in the contractor's line of work. In this manner the employer will assume liability for those hazards which the independent contractor is unlikely to be aware of and therefore unable to protect against.

*Id.* at 890; see also *id.* at 888. Viewing the evidence in the light most favorable to appellees, we conclude that the jury could reasonably have believed that Matomco informed C & S Welding that the tanker had last contained diesel; that C & S personnel reasonably relied upon that representation; that Matomco knew that the tanker had in fact last contained JP–4; and that Matomco knew or had reason to know that the tanker thus required more careful handling in regard to the contemplated repairs. The jury therefore might have reasonably concluded that Matomco created risks "not routinely encountered in the contractor's line of work" and of which David Campbell was "unlikely to be aware." *Id.; see also id.* at 877 (discussing *Moloso v. State,* 644 P.2d 205, 214–15 (Alaska 1982)). Matomco's motion for a directed verdict on this issue was therefore properly denied: *in these circumstances Matomco may be personally if not also vicariously responsible for the acts or omissions of its independent contractor. Compare Sievers,* 746

---

**6.** Matomco, for the first time, argues in its reply brief that any violation of 49 C.F.R. § 172.516 cannot, as a matter of law, be a basis for liability because there is no proximate cause between the violation and the Campbell's actions. Grounds raised for the first time in a reply brief are considered waived. *See* Appellate Rule 212(c)(1)[i] and (c)(3). Appellate Rule 212(c)(3) provides:

> The appellant may file a brief in reply to the brief of the appellee. This brief may raise no contentions not previously raised in either the appellant's or appellee's briefs. . . .

*Hitt v. J.B. Coghill, Inc.,* 641 P.2d 211, 213 (Alaska 1982); *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977); *Application of Kennelly,* 567 P.2d 301, 304 n. 3 (Alaska 1977).

**7.** This regulation provides:

> (A) Used containers. No welding, cutting, or other hot work shall be performed on used drums, barrels, tanks or other containers until they have been cleaned so thoroughly as to make absolutely certain that there are not

flammable materials present or any substances such as greases, tars, acids, or other materials which subjected to heat might produce flammable or toxic vapors. Any pipe lines or connections to the drum or vessel shall be disconnected or blanked.
> (B) Venting and purging. All hollow spaces, cavities or containers shall be vented to permit the escape of air or gasses before preheating, cutting or welding. Purging with inert gas is recommended.

**8.** The jury was instructed as follows:

> You have just been read OSHA General Safety Code, 01.1002(d)(3), a statute, ordinance, or safety order or regulation in force in the State of Alaska. This safety provision establishes the legal standard of reasonable conduct in light of the apparent risk. Thus, if you find that the contractor employed by defendant to repair defendant's tanker violated this statute, ordinance, or safety order or regulation, you will find that such violation was negligence.

P.2d at 888 n. 3., 889 & nn. 5 & 6 with, *e.g., Moloso v. State,* 644 P.2d 205, 214–15 (Alaska 1982).

### E. *Whether Matomco is Strictly Liable Under The Doctrine of Ultrahazardous Activity.*

■ The superior court submitted to the jury as a separate theory of negligence whether the welding, buffing, or grinding of a petroleum tanker is an abnormally dangerous activity. Matomco argues in part that the superior court erred in submitting this issue to the jury.[9] In *Yukon Equipment v. Fireman's Fund Ins. Co.,* 585 P.2d 1206, 1210 (Alaska 1978) we stated that the determination whether an activity is "abnormally dangerous" under the Second Restatement is "for consideration of the court, not the jury."[10] The same is true of "ultrahazardous activity" as defined in the First Restatement: "[w]hat

facts are necessary to make an activity ultrahazardous ... is a matter for the judgment of the court." Restatement of Torts § 520 comment h (1938). In the case at bar, Matomco objected to the superior court's submitting the question of abnormally dangerous activity to the jury; given our ruling in *Yukon Equipment* and the consistent position of the Restatement, we hold that the superior court erred in this regard.

We further conclude that the welding, buffing, or grinding of a petroleum tanker, in contrast to petroleum tanker transport,[11] is not an ultrahazardous activity:[12] our review of the record persuades us that although the welding, buffing, or grinding of a petroleum tanker necessarily involves a risk of serious harm, such risks can be eliminated by the exercise of "utmost care"[13] by the parties involved. Neither is the activity "not a matter of common us-

**9.** The argument posited by Alliance and Lloyds that the issue is irrelevant because the jury did not reach the question is without merit. The jury did not reach the special verdicts' question "Have you decided the case based on abnormally dangerous activity?" because the jury expressly found that no act or omission on the part of Wise and Arctic or Sutton was a legal cause of the explosion; thus, the jury did not have to assign shares of legal cause for comparative negligence purposes. *See* Restatement (Second) of Torts § 524 ("[C]ontributory negligence is not a defense to the strict liability of one who carries on an abnormally dangerous activity ... [unless] [the plaintiff] ... knowingly and unreasonably subjected himself to the risk of harm.").

**10.** *See also* Restatement (Second) of Torts § 520 comment 1.

**11.** *See, e.g., Siegler v. Kuhlman,* 81 Wash.2d 448, 502 P.2d 1181, 1184–85 (1972), *cert. denied,* 411 U.S. 983, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973) (hauling gasoline as freight "takes on uniquely hazardous characteristics") (citing *Fletcher v. Rylands,* L.R. 1 Ex. 265, 278 (1866), *aff'd,* 3 H.L. 330 (1868)). We express no opinion whether an intervening force negates strict liability. *See, e.g.,* Restatement (Second) of Torts § 522 comment a (intervening force does not negate strict liability); *but see, e.g., New Meadows Holding Co. v. Wash. Water Power Co.,* 102 Wash.2d 495, 687 P.2d 212, 216 (1984) (noting the absence in *Siegler* of intervening outside force).

**12.** This court has stated its preference for the "ultrahazardous activity" test of the First Re-

statement over the "abnormally dangerous" test of the Second. *State Farm Fire & Casualty Co. v. Municipality of Anchorage and Central Alaska Utilities,* 788 P.2d 726, 729 (Alaska 1990); *see also* W. Keeton, *Prosser and Keeton on Torts* § 78 at 555–56 (5th ed.1984). Our preference does not detract from related portions of the Second Restatement, which we apply by analogy. *See, e.g.,* Restatement (Second) of Torts § 427A ("One who employs an independent contractor to do work which the employer knows or has reason to know to involve an abnormally dangerous activity is subject to liability to the same extent as the contractor for physical harm to others caused by the activity.").

**13.** Sections 519 and 520 of the First Restatement provide:

> § *519. MISCARRIAGE OF ULTRAHAZARDOUS ACTIVITIES CARRIED ON.*
> Except as stated in §§ 521–4, one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm.
> § *520. DEFINITION OF ULTRAHAZARDOUS ACTIVITY.*
> An activity is ultrahazardous if it
> (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

age." [14] The superior court's error in submitting the issue of strict liability to the jury is therefore not harmless but prejudicial error.

### F. Did the Superior Court Err in Allowing George Wise to Testify Using his Proof of Loss?

A major component of Arctic's alleged losses in the explosion was several hundred thousand dollars worth of inventory. Approximately two weeks after the explosion, Wise made a partial list of items (eleven pages long) that were destroyed in the fire. He gave this list to Arctic's insurer, Alliance, which used it as proof of loss. Wise admits that the prices and dates of acquisition were not carefully checked, and that the list was sloppily prepared. Alliance also asked him to prepare a complete list of items, even though the items on the first list exceeded the policy limits. Wise complied, adding pages twelve through thirty-six to the proof of loss. Although the proof of loss was not prepared in anticipation of litigation, Wise went back through the proof of loss prior to his deposition, correcting dates and amounts. He found receipts for 175 out of 827 items.

George Wise's testimony as to damages was essential to all plaintiffs' cases but Lloyds'. Wise had never taken a physical inventory of Arctic's holdings. At trial, counsel asked Wise to refer to the amended proof of loss while testifying. Wise advised the court that he could remember almost everything without referring to the proof of loss, but that it would take longer. Counsel for Wise stated that he was offering the document under Alaska Rules of Evidence 612 and 803(5). The superior court denied its use under Rule 803(5).[15] However, the court did permit Wise to refer to the document while testifying, under Rule 612(a).[16] The court admonished Wise's counsel, "I don't want him reading the document," and stated its intention to permit Matomco's attorney full cross-examination. The court decided that permitting Wise to use his amended proof of loss while testifying would not be prejudicial and would save two weeks time. Transparencies of the thirty-six pages were made. For four days, the jury heard Wise's testimony. Matomco's counsel then conducted an extensive cross-examination of Wise, pointing out inconsistencies as to values between his deposition testimony and his trial testimony.

We hold that under Rule of Evidence 612(a) it was not error on the superior court's part to allow Wise to use the proof of loss in testifying. Contrary to Matomco's assertion, the witness's memory need not be completely exhausted before the use of a memory-refreshing document is permissible; rather, this is a matter of discretion.[17] Here it is clear that the superior court was concerned that Wise's testimony would take an inordinate amount of time unless Wise could refer to the list of items in the proof of loss while he testified. Given that the superior court permitted

(b) is not a matter of common usage.

**14.** First Restatement § 520(b).

**15.** *Rule 803. Hearsay Exceptions—Availability of Declarant Immaterial.*

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(5) *Recorded Recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

**16.** *Rule 612. Writing Used to Refresh Memory.*

(a) *While Testifying.* Any writing or object may be used by a witness to refresh his memory while testifying. If, while testifying, a witness uses a writing or object to refresh his memory, any party seeking to impeach the witness is entitled, subject to subdivision (c) [Claims of Privilege or Irrelevance], to inspect the writing or object, to cross-examine the witness thereon, and to introduce those portions which relate to the testimony of the witness.

**17.** *See McCormick on Evidence* § 9 at 21 (3d ed.1984) (citations omitted); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 612[01], at 612–13 to –14 (1988).

opposing counsel inspection and extensive cross-examination, we conclude that the superior court did not abuse its discretion in allowing Wise to use the list while testifying.

G. *Did the Superior Court Err in Admitting Into Evidence Copies of the Transparencies Wise Referred to and Annotated During His Testimony Concerning Damages?*

After redirect, counsel for Wise renewed his earlier request to introduce the transparencies into evidence. Matomco's counsel objected on the ground that they were hearsay and lacked foundation. The superior court overruled the objection stating that it would admit them with a cautionary instruction to the jury.[18]

 We conclude that the superior court did not abuse its discretion in admitting copies of the transparencies into evidence. "In general, a writing used to refresh a witness's memory is not testimony and is inadmissible when offered by the witness's party." *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1102 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Nevertheless, the writing may be admitted if the trial court determines that its inspection would assist the jury in understanding the evidence and would not be prejudicial to the opposing party. The rules on admissibility of such a writing "should not be treated as dogmas of inherent efficiency. They are merely crude rules-of-thumb.... The trial court's discretion should control." *Id.* at 1103 (citation omitted).[19]

18. The instruction read as follows:
 [THE COURT:] ... I caution you in regard to Exhibit 194, that the listing that Mr. Wise used for his testimony, that you'll have with you, is not his entire testimony. You have to take into account all the things that he said in regard to those various items. You're going to have to rely on your recollection but don't rely solely on those slides, but everything Wise had told you in regard to those items....

19. *See also Thompson v. United States,* 342 F.2d 137 (5th Cir.1965), *cert. denied,* 381 U.S. 926, 85

## IV. DISPOSITION OF THE APPEAL.

Wise and Arctic take the position that a jury returning a general verdict is presumed to have found all issues in favor of the prevailing party, and that such a verdict will be sustained on appeal so long as any one of several grounds submitted to the jury for that verdict is supported by the law and the facts of the case. *See Lorbeer v. Weatherby,* 190 Kan. 576, 376 P.2d 926, 929 (1962); *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120, 124 (S.D.1977).

Our prior decisions have rejected arguments similar to that made by Wise and Arctic. In *Grimes v. Haslett,* 641 P.2d 813, 819 (Alaska 1982), we said:

In the context of a general verdict comprising more than one issue the erroneous refusal to direct a verdict as to one issue constitutes grounds for a new trial unless the nonmoving party would prevail, as a matter of law, upon the other issue.

"Where several issues of fact are tried and any one of them is erroneously submitted to the jury and a general verdict is returned for plaintiff, defendant is entitled to have the verdict set aside and to have a new trial, unless it conclusively appears as a matter of law that plaintiff was entitled to the verdict upon other grounds." [Citation omitted.] The reason for requiring the new trial is the impossibility of knowing whether the general verdict was based upon a properly submitted issue or an improperly submitted issue.

*Schroht v. Voll,* 245 Minn. 114, 71 N.W.2d 843, 846 (Minn.1955). *Accord Miracle Boot Puller Co. v. Plastray Corp.,* 84 Mich.App. 118, 269 N.W.2d

S.Ct. 1560, 14 L.Ed.2d 685; *Montgomery v. Tufford,* 165 Colo. 18, 437 P.2d 36, 39 (1968); *State v. Gallagher,* 151 Mont. 501, 445 P.2d 45 (1968); *Jurgiewicz v. Adams,* 71 R.I. 239, 43 A.2d 310 (1945); *Moore v. Kelly & Reddish, Inc. v. Shannondale, Inc.,* 152 W.Va. 549, 165 S.E.2d 113 (1968)).

We have reviewed Matomco's remaining specifications of error regarding portions of the superior court's evidentiary rulings and find that they are lacking in merit.

496, 498 (Mich.App.1978); *Duncan v. Germaine*, 330 So.2d 479, 481 (Fla.App. 1976). Under this test, if it was error to submit either the negligence or causation questions to the jury, then a new trial is required unless Haslett was entitled to a verdict as a matter of law on the other question. Thus, we first inquire whether the superior court erred in not directing a verdict that Haslett was negligent or that she caused Grimes' injuries.

*See also Wilson v. City of Kotzebue*, 627 P.2d 623, 631–32 (Alaska 1981); *Cummins v. King & Sons*, 453 P.2d 465, 467–68 (Alaska 1969); *Evans v. Buchner*, 386 P.2d 836, 837 (Alaska 1963).

Given the fact that a general verdict was employed in the case at bar, the erroneous jury instruction discussed in part III.C., infra, and our holding that the ultrahazardous activity basis of liability was erroneously submitted to the jury for its consideration, we conclude that a new trial must be held.

REVERSED and REMANDED for a new trial in accordance with this opinion.[20]

---

**20.** Our disposition makes it unnecessary to address any of the other issues raised in this appeal.