**Donald CHAFFIN, Plaintiff–Appellant,**

v.

**UNITED STATES of America; Martin Marietta Services, Inc., Defendants–Appellees.**

No. 97–35688.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1998.

Decided May 27, 1999.

Michael Flanigan, Walter & Flanigan, Anchorage, Alaska, for plaintiff-appellant.

Michael Corey, Marietta Services, Anchorage, Alaska, for defendants-appellees.

James Torgerson, Assistant United States Attorney, Anchorage, Alaska, for defendants-appellees.

Before: GOODWIN, SCHROEDER and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge:

Donald Chaffin was badly mauled and disfigured when a polar bear burst through a window of the living quarters of a remote Alaskan Long Range Radar System ("LRRS") site. Chaffin, at the time, was an employee of a contractor, but the site was owned by the United States Air Force. Chaffin sued the United States for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. The district court ruled that the government was immune from any liability for the design of the living quarters because the design fell within the discretionary function exception to liability under the FTCA. Concluding that the government had contracted the entire operation of the

**1210**

LRRS site to a contractor, and that no triable issues of fact existed under any other theory advanced for liability of an owner under Alaska law, the district court granted the government's motion for summary judgment.

On appeal, Chaffin stresses his contentions that the record contains evidence of the government's negligence, first, in failing to provide safe housing for contractor employees; second, in allowing whale meat to be stored by Natives near the building where the attack occurred; and third, in insisting that the contractor forbid firearms at the site.

We agree with the district court that the discretionary function exception to government liability under the FTCA renders the government immune from a negligence claim for the design decision to fill in with gravel an area between the raised road and the living quarters, which allowed the bear to reach the window. We also agree that the government did not retain sufficient control over the operations of the site to subject it to liability for overall negligence in site operations. However, the record contains evidence that the government had superior knowledge of the risk of polar bear attack and failed to take steps to reduce the risk, and, further, that the government's policy of forbidding firearms contributed to the delay and difficulty of fending off the bear. We therefore conclude that triable issues exist as to the government's liability for negligence on these issues, which relate to an owner's liability under Restatement (Second) of Torts §§ 343 (responsibility for maintaining safe premises), 413 (knowledge of peculiar risk), and 410 (negligent instructions to contractor). We reverse the judgment of the district court and remand for further proceedings.

### FACTS

The Air Force's LRRS site at Oliktok, Alaska, is on the north slope of Alaska, near the Alaska Native village of Nuiqsut. The facility was built in 1956 within the government-owned enclave on Oliktok Point, bordered on one side by the Ugnuravik River, which the Natives of Nuiqsut use as a "haul out site" for whales. At the time of the incident, the site had prefabricated living quarters attached together in a chain or train. Stilts raised the buildings approximately five feet off of the ground, to keep the building off the permafrost and prevent snow from accumulating on the sides. A road constructed on a gravel pad ran along one side of the building, about five feet above the permafrost. Near the entrance to the living quarters, the area between the road and the building was filled in with gravel, so that the windows on that part of the building were only about five feet, rather than ten feet, above the ground.

In 1989, the Air Force entered into a contract with General Electric Government Services Company, which, after a series of mergers and acquisitions, is now Lockheed Martin. The contract required Lockheed Martin, Chaffin's employer, to operate, maintain, and support the Oliktok LRRS site and sixteen other remote LRRS sites. The contract prescribed that the government would not supervise or control contractor employees and that "Contractor employees shall be accountable not to the Government but solely to the Contractor, who in turn, shall be accountable to the Government." The government had no employees at the Oliktok site. In the contract, the government retained the right to inspect sites, and the government in fact inspected the Oliktok site semi-annually. A Lockheed Martin supervisor testified in his deposition that because the cost of modifications were not included under the contract, Lockheed Martin would not make any modifications to the living quarters without government agreement and funding. He testified that such modifications necessitating the government's cooperation would presumably include the installation of safety devices and barriers.

On November 30, 1993, Chaffin and a co-worker were relaxing inside a living quarters' lounge, located in the part of the building where the windows were only five

feet off of the ground. A polar bear suddenly appeared at the window, crashed through it, and caught Chaffin as he fled. Two co-workers tried to drive the bear away using fire extinguishers. Another co-worker eventually killed the bear with a shotgun, which was hidden in his bedroom and not readily accessible because it was possessed in contravention of the firearm policy dictated by Lockheed Martin's contract with the Air Force. Chaffin suffered grave, permanent, and disfiguring injuries due to the attack.

Actual bear attacks upon human beings occur only rarely, and this assault constituted merely the second mauling by a polar bear in this century in Alaska. Nevertheless, the record in this case contains indicia of a palpable risk of a bear attack to employees at the site in the fall of 1993. The builders of the LRRS sites had encountered polar bears in the 1950's. A polar bear had attacked a worker at a LRRS site in the 1960's. In 1985, at the Oliktok LRRS site, a polar bear had attempted to enter the living quarters' kitchen, located next to the lounge where Chaffin was mauled. That bear was beaten back by a cook wielding a frying pan, and another individual with a pool stick. All of this occurred before the government contracted operation of the site to Lockheed Martin.

At the time of this incident, whale meat was stored about 300 yards from the living quarters. Whether it lay on government property is not clear from the record, but its proximity clearly created a heightened risk of attack. In the days leading up to Chaffin's mauling, polar bears had been spotted feeding off the meat and prowling around the area. One bear had been observed peering in the windows of the living quarters. The same bear was killed near the meat only four days before Chaffin's attack. On the very day of the attack, a state biologist had visited the site and had recommended to Lockheed Martin certain modifications to the living quarters, including adding exterior lighting, installing bars or grating on the windows, and changing the door configuration so that the doors opened outward. This attack occurred, of course, before any precautions were taken.

## DISCUSSION

■ The Federal Tort Claims Act waives the government immunity from suits for negligence and makes the government generally liable in the same manner as individuals under state law. 28 U.S.C. § 1346(b). The government has not waived its immunity under the FTCA, however, for *inter alia*, claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

One of Chaffin's main contentions before the district court was that the government was negligent in filling in the area outside the window and thereby making the window accessible to bears. The district court correctly held that under the law of this circuit, such design decisions, even if made negligently, constitute discretionary functions that preclude government liability. *See, e.g., Richardson v. United States*, 943 F.2d 1107, 1111–12 (9th Cir.1991) (decision of whether to place overhead ground wires in a given location involved the "balancing of many technical, economic, and even social considerations and should not be second guessed"); *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1029, 1031–32 (9th Cir.1989) (discretionary judgment exception protected decision of whether to line canal with concrete but did not preclude liability for negligence in the canal's construction); *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir.1987) (decision of whether to design

park road without guardrails protected by exception, but failure to maintain road in safe condition not protected).

Liability may be predicated on evidence of a deviation from the original design plan due to a failure to maintain the road in a safe condition, *ARA Leisure Servs.*, 831 F.2d at 195, or a failure to construct the site in accordance with the original plans, *Kennewick Irrigation Dist.*, 880 F.2d at 1031–32. Nothing in this record indicates that the fill represented such a deviation.

 On appeal Chaffin stresses several other theories of negligence under Alaska law. In Alaska, as in most states, an owner or employer does not normally incur liability for physical harm stemming from the negligence of an independent contractor. *See Hobbs v. Mobil Oil Corp.*, 445 P.2d 933, 934 (Alaska 1968); Restatement (Second) of Torts ("Restatement") § 409. Chaffin argues that this case falls under several Restatement exceptions to this general rule, which Alaska has adopted, *Moloso v. State*, 644 P.2d 205 (Alaska 1982) (applying the Restatement sections raised by Chaffin).

 Chaffin first submits that Restatement § 414, which concerns liability stemming from the retention of control by an owner, supports government liability. Restatement § 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

For liability to arise under this section, the employer must have retained some control over the actual work or safety at the job site on a day-to-day basis. *See, e.g., Parker Drilling Co. v. O'Neill*, 674 P.2d 770, 776–77 (Alaska 1983) (owner ran the operation, owned the faulty equipment, and was directly responsible for safety and supervision); *Hammond v. Bechtel, Inc.*, 606 P.2d 1269, 1275 (Alaska 1980) (employer conducted extensive safety inspections,

had the authority to direct that defective equipment not be used, and did so direct on several occasions); *Hobbs*, 445 P.2d at 934 (employer had broad authority, which it sometimes exercised, to direct contractor's operations and had employees stationed at the work site).

Chaffin contends that this section applies because the government retained control over building upgrades by requiring approval for expenditures to alter the facilities. A requirement for approval of building upgrades does not amount to the retention of control over day-to-day operations or safety at the site, as required for liability under Restatement § 414. Therefore, the district court properly held that this section did not support liability.

 In a related contention, Chaffin asserts that the government negligently supervised the Oliktok LRRS site because even its infrequent inspections should have detected hazards which the government itself created, including the gravel fill and the storage of the whale meat. In Alaska, an employer of a contractor can be liable for negligent supervision of the contractor's employees only if it affirmatively undertakes a duty to supervise in the first place. *See Moloso*, 644 P.2d at 211–12. Because the government assumed no responsibility for supervising the site under the contract and only inspected the site semiannually, the government cannot be liable for negligent supervision. Alaska has expressly recognized that the employer's retention of a right to inspect is not in and of itself sufficient to impose liability on an employer of an independent contractor. *See Moloso*, 644 P.2d at 211.

 Chaffin's arguments for the applicability of Restatement § 343 are stronger. That section imposes liability on a landowner that fails to maintain property in a safe condition. Restatement § 343, as Alaska has adopted it, provides:

> A landowner … must act as a reasonable person in maintaining his property in a reasonably safe condition in view of

all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk. *Moloso,* 644 P.2d at 219 (internal quotations and citation omitted) (omission in original).

Chaffin contends that the government created a dangerous situation on its property by supplying housing that did not provide an effective barrier against bears, while at the same time allowing Natives to store whale meat nearby and forbidding employees at the site from protecting themselves with firearms. He relies on *Carlson v. State,* 598 P.2d 969 (Alaska 1979), where the Alaska Supreme Court held that the state faced liability for a bear mauling at a state-owned highway roadside area where the state knew many persons parked, and where the state had discontinued garbage pickup. *Carlson* supports Chaffin's position that a landowner who knows that an attraction for bears is creating a dangerous situation on the property must remove the danger or warn people who may be threatened by it. 598 P.2d at 974; *see also Moloso,* 644 P.2d at 219 (characterizing this cause of action as imposing on employers a duty to warn independent contractors of hidden dangers).

■ The district court distinguished *Carlson* on the ground that the attraction in this case, the whale meat, was not stored on government property or as a result of government action, and Chaffin had not shown that the government could have cleaned up the site unilaterally. On summary judgment, however, we must view the record in the light most favorable to the non-moving party. *Matomco Oil Co., Inc. v. Arctic Mechanical, Inc.,* 796 P.2d 1336, 1340 (Alaska 1990). Here, the record does not establish that the meat was stored on non-government property. Nor does the record establish that the government was powerless to do anything about the hazard, regardless of on whose land the whale meat was stored.

■ Chaffin also relies upon Restatement § 413, which provides that an employer must take precautions when it knows of peculiar risks that work might entail. Restatement § 413 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Alaska interprets "peculiar" risks as risks about which the employer has greater knowledge and is therefore "in the best position to identify the precautions that are necessary to safely perform the job." *Sievers v. McClure,* 746 P.2d 885, 889 n. 5, 890 (Alaska 1987) (the risk to a roofer of falling off an icy, sloped roof not peculiar); *see also Matomco Oil Co.,* 796 P.2d at 1340 (where employer misinformed contractor about the last substance that a tanker to be repaired had held, and tanker subsequently exploded, employer liable under this section). The government contends that Lockheed Martin had at least as much knowledge of the presence of polar bears around the Oliktok site at the time of the attack as the government had. Triable issues exist, however, as to whether the government had superior knowledge of the earlier attacks, including the 1985 attack at the Oliktok site as well as a polar bear mauling at another LRRS site in the 1960's which prompted the government to provide accessible firearms at all LRRS sites for a time. The record further reveals that there were numerous other encounters between personnel and polar bears when LRRS sites like Oliktok were being built. There is no evidence that the contractor who began operating the site in 1989 had knowledge of these incidents. We conclude that a jury should decide whether the government, given its longer

**1214**

experience with these LRRS sites in Alaska, had superior knowledge and thus neglected its duties to provide a safe work site or to warn Lockheed Martin of the full extent of the danger.

Finally, Chaffin contends that the government's insistence on prohibiting firearms at the site creates an issue of fact as to the government's liability under Restatement § 410, which authorizes employer liability where the employer has given negligent instructions to an independent contractor, *see Moloso,* 644 P.2d at 217. Restatement § 410 provides:

> The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

The district court correctly observed that the government never gave the contractor any specific directions about bear safety. However, the record read in the light most favorable to Chaffin leaves unresolved questions about the relationship between the government as landowner and the contractor as Chaffin's employer.

In citing the Restatement, we express no opinion as to whether any of the exceptions to the FTCA's waiver of government immunity may preclude a cause of action for negligence against the United States, particularly with respect to the ban on firearms.

For these reasons, we REVERSE THE JUDGMENT AND REMAND TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.