# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| STATE OF DELAWARE, *ex rel.* KATHLEEN JENNINGS, Attorney General of the State of Delaware,<br><br>Plaintiff,<br><br>v.<br><br>MONSANTO COMPANY; SOLUTIA, INC.; and PHARMACIA LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. N21C-09-179 MMJ CCLD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: June 15, 2022
Decided: July 11, 2022

On Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)
**GRANTED**

## OPINION

Christian Douglas Wright, Esq., Ralph K. Durstein III, Esq., State of Delaware Department of Justice, Wilmington, DE, Amy Williams-Derry, Esq., Daniel Mensher, Esq., Alison S. Gaffney, Esq. (Argued), Keller Rohrback L.L.P., Seattle, WA, Keil Mueller, Esq. (Argued), Steve Larson, Esq., Emily Johnson, Esq., Stoll Stoll Berne Lokting & Shlachter P.C., Portland, OR, *Attorneys for Plaintiff*

Christian J. Singewald, Esq., Timothy S. Martin, Esq., Daryll Hawthorne-Searight, Esq., White and Williams LLP, Wilmington, DE, Thomas M. Goutman, Esq., David S. Haase, Esq., Kim Kocher, Esq. (Argued), Shook, Hardy & Bacon L.L.P.,

Philadelphia, PA, Adam E. Miller, Esq., Susan L. Werstak, Esq., Shook, Hardy & Bacon L.L.P., St. Louis, MO, Richard L. Campbell, Esq., Shook, Hardy & Bacon L.L.P., Boston, MA, *Attorneys for Defendants*

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

This case is one of many lawsuits filed in numerous States, seeking damages for the release of PCBs into the environment. Defendants are PCB manufacturers. The State asserts claims for public nuisance, trespass, and unjust enrichment.

### *The History of PCBs*

Monsanto designed, marketed, and sold polychlorinated biphenyls ("PCBs") in bulk for use by third-party manufacturers in an array of industrial and commercial applications. Monsanto began manufacturing PCBs in 1935. From the 1930s until about 1977, PCBs were considered valuable because of their chemical properties. The chemical composition of PCBs makes them especially stable, causing them to break down slowly, if at all. PCB molecules are indiscernible in the environment without scientific testing.

PCBs now are classified as a family of toxic chemicals that have had a negative impact on the health of wildlife and people. PCBs are lipophilic and chiefly insoluble in water. As a result, PCBs tend to accrue in the fatty tissue of animals. PCBs also tend to penetrate the food chain when small organisms

2

consume them. As the food chain advances, the effect of PCBs magnifies due to the increase in fatty tissue as the size of the animal increases.

The State alleges Monsanto was aware of the toxic effect of PCBs on animals and humans as early as 1937. The State also asserts that during the 1950s, Monsanto was aware that PCBs could both escape into and pollute the environment through ordinary use, maintenance, and disposal of PCB associated products. The State alleges that around 1968, Monsanto recognized that PCB contamination in a waterway adjacent to its production facility could result in future legal problems. In 1969, Monsanto formed an Ad Hoc Committee to investigate the effects of PCBs on the environment.

In 1971, an interdepartmental task force was formed—which included the Environmental Protection Agency ("EPA")—to investigate the existence of PCBs in the environment. The task force noted that the largest amounts of PCBs enter the environment through industrial and municipal emissions into inland and coastal waters. The task force also reported that, as of 1972, there was no toxicological or ecological data available to indicate the levels of the PCBs in the environment that threatened human health. The EPA issued a follow-up report in 1976. This report contained no data concerning PCBs in the water, sediment, soil, or air in Delaware.

Monsanto voluntarily ended the sale of PCBs in 1970-71, except for limited use in electrical capacitors and transformers. The Task Force for the 1972 report

had noted that the continued use of PCBs in electrical transformers and capacitors is necessary for fire safety reasons. Further, the report stated that PCBs offered minimal risk of environmental contamination.

In 1976, the EPA issued guidelines for the removal of PCB-containing wastes in conjunction with the Toxic Substances Control Act of 1976 ("TSCA"). The EPA specifically placed responsibility for proper disposal on the generators of PCB-containing wastes from industrial facilities. By 1977, Monsanto already had produced and sold over 600,000 metric tons of PCBs. The EPA issued comprehensive regulations requiring the cleanup and removal of PCBs and associated products. In 1979, the EPA restricted the manufacturing, processing, use, and distribution of PCBs to explicitly exempted and authorized activities.

During the 1980s, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") to remedy hazardous waste sites and oversee the discharge of wastes, including PCBs. Subsequently, Delaware enacted the Delaware Hazardous Substance Cleanup Act to address sites not governed by CERCLA.

### The Purported Effects of PCBs in Delaware

The State alleges that Zone 5 of the Delaware River and Zone 6 of the Delaware Bay are impaired due to PCBs, under Section 303(d) of the Clean Water Act in 1996. The Delaware River Basin Commission ("DRBC") determined a total

maximum daily load ("TMDL") for PCBs for Zone 5 of the river in 2003, and for Zone 6 in 2006. Also in 2006, PCBs were detected in certain fish species. As a result, Delaware issued general fish consumption advisories in 2007.

Further, the State contends the Saint Jones River, the Appoquinimink River, the Brandywine River, Red Clay and White Clay Creek, and the Christina River are impaired due to PCB contamination.

### *The Purported Source of PCBs in Delaware*

The State alleges that PCBs enter the environment by escaping their intended uses via open applications; leaks and discharge from the failure of closed applications; and dumping, leaking, spilling, and erroneous disposal by third parties. The State identified the Amtrak Rail facilities as the "largest chronic source of PCB loading to the Delaware River in the State." The State alleges that the "transformers on the trains contained PCBs, which were released into the soil during maintenance, repair, and overhaul at [rail] facilities." The State asserts it has been working in conjunction with Amtrak to clean up and remediate the railyard.

The State contends that after introduction into the environment, PCBs are moved via air, water, soil, and sediment. PCBs purportedly travel substantial distances to remote areas far from their release origin.

5

## *Procedural History*

The State filed its Complaint on September 22, 2021.  The State asserts claims for: (1) public nuisance; (2) trespass; and (3) unjust enrichment.  The State additionally seeks punitive damages in conjunction with its public nuisance and trespass claims.  Defendants have filed a Motion to Dismiss.

## STANDARD OF REVIEW

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[1]  The Court must accept as true all well-pleaded allegations.[2]  Every reasonable factual inference will be drawn in the non-moving party's favor.[3]  If the claimant may recover under that standard of review, the Court may deny the Motion to Dismiss.[4]

## ANALYSIS

### *Public Nuisance*

Defendants rely on *State ex rel. Jennings v. Purdue Pharma L.P.*,[5] arguing that products-based claims for public nuisance are not cognizable under Delaware law.  In *Purdue*, the State alleged that *Purdue* violated both statutory and common

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del.).
[2] *Id.*
[3] *Wilmington Sav. Fund. Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.).
[4] *Spence*, 396 A.2d at 968.
[5] 2019 WL 446382 (Del. Super.).

6

law duties, resulting in injury to the State. *Purdue* defendants argued that the State had not identified a public right with which *Purdue* defendants had interfered. This Court held that "a defendant is not liable for public nuisance unless it exercises control over the instrumentality that caused the nuisance at the time of the nuisance."[6] This Court also concluded that Delaware does not recognize public nuisance claims for products.

In *Sills v. Smith & Wesson Corporation,*[7] this Court also limited actions for public nuisance by excluding products-based public nuisance claims. The City of Wilmington brought an action against handgun manufacturers and trade associations. The City sought to recover money damages resulting from the manufacturing, marketing, and promotion of handguns. *Sills* defendants argued that *Sills* plaintiffs had no cognizable claim for public nuisance because public nuisance actions do not extend to the manufacture and sale of a product.[8] The City of Wilmington relied on cases alleging public nuisance based on the abatement of toxic waste.[9] The City of Wilmington contended that "governmental entities may recover direct costs associated with protecting their citizens in the 'abatement of a public nuisance.'"[10] This Court declined to expand the scope of the public

---

[6] *Id.* at *13.
[7] 2000 WL 33113806 (Del. Super.).
[8] *Id.* at *2.
[9] *Id*. at *13 n.9.
[10] *Id*. at *2.

nuisance actions, beyond situations involving land use, to include product-based claims.  The *Sills* Court found that allegations of "unreasonable interference with the exercise of the common rights of the health, safety and welfare of the citizens of Wilmington" were subsumed within the negligence claim.[11]

In *City of Bloomington, Indiana v. Westinghouse Electric Corporation*,[12] the United States Court of Appeals for the Seventh Circuit declined to hold Monsanto liable on a nuisance theory.  The City of Bloomington sued based on Westinghouse's use of PCBs in its Bloomington plant.  Waste from Westinghouse containing PCBs was hauled to various landfills in the City of Bloomington, resulting in PCBs found in both landfills and sewage.  There was no evidence that Monsanto participated in carrying on the nuisance.  Monsanto was not held liable.

Defendants have cited case law from other jurisdictions prohibiting nuisance causes of action for product-related claims.

In *Tioga Public School District # 15 of Williams County, State of North Dakota v. United States Gypsum Company*,[13] the United States Court of Appeals for the Eight Circuit declined to extend a nuisance theory to an asbestos-related claim.

> Under Tioga's theory, any injury suffered in North Dakota would give rise to a cause of action under section 43–02–01 regardless of the

---

[11] *Id.* at *7.
[12] 891 F.2d 611 (7th Cir. 1989).
[13] 984 F.2d 915 (8th Cir. 1993).

defendant's degree of culpability or of the availability of other traditional tort law theories of recovery. Nuisance thus would become a monster that would devour in one gulp the entire law of tort....[14]

In *State v. Lead Industries, Association, Incorporated*, the Supreme Court of Rhode Island held that "the proper means of commencing a lawsuit against a manufacturer of lead pigments for the sale of an unsafe product is a products liability action. The law of public nuisance never before has been applied to products, however harmful."[15]

In *State ex rel. Hunter v. Johnson & Johnson*,[16] the Supreme Court of Oklahoma cited *Bloomington*. The *Hunter* Court reasoned that Johnson and Johnson, as a manufacturer, "did not control the instrumentality alleged to constitute the nuisance at the time it occurred."[17] "A product manufacturer's responsibility is to put a lawful, non-defective product into the market. There is no common law tort duty to monitor how a consumer uses or misuses a product after it is sold."[18]

---

[14] *Id.* at 920.
[15] 951 A.2d 428, 456 (R.I. 2008); *See also People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 196 (N.Y. App. Div. 2003) ("...giving a green light to a common-law public nuisance cause of action today will, in our judgment, likely open the courthouse doors to a flood of limitless, similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities.").
[16] 499 P.3d 719 (Okla. 2021).
[17] *Id.* at 728.
[18] *Id.*

The State cites cases involving public nuisance claims based on theories of traditional environmental contamination.

The State relies on *Artesian Water Company v. Government of New Castle County*.[19] In *Artesian Water*, the Court of Chancery denied summary judgement on a public nuisance claim, stating: "The right to reasonable groundwater use is a right which all landowners possess and in this sense it may be termed a common or public right."[20]

Additionally, the State relies on *Crystal Alexander v. Evraz Claymont Steel Holdings Inc.*,[21] which involved air pollution. The Court of Chancery held: "It is no stretch to conclude that Defendant's alleged interference with air quality constitutes interference with a public right and therefore constitutes a public nuisance."[22] "There is no question that foul odors, dust, noise, and bright lights— if sufficiently extreme—may constitute a nuisance."[23] *Alexander* also addresses toxic emissions affecting adjacent property.[24]

All Delaware cases cited by the State involve pollution from an adjacent property. Therefore, the Court finds these cases distinguishable. *Purdue, Sills,* and

---

[19] 1983 WL 17986 (Del. Ch.).
[20] *Id*. at *22.
[21] 2013 WL 8169799 (Del. Super.).
[22] *Id.* at *2.
[23] *Id.* (quoting *Schneider National Carriers, Inc. v. Bates,* 147 S.W.2d 264, 269 (Tex.)).
[24] *Id.* at *1.

the great weight of authority in other jurisdictions[25] support the conclusion that product claims are not encompassed within the public nuisance doctrine. The Court finds that the State has failed to state a claim for public nuisance. The Motion to Dismiss the claim for public nuisance is granted pursuant to Rule 12(b)(6).

### *Trespass*

### *Elements*

Intentional Trespass involves three elements: "(1) the plaintiff must have lawful possession of the land; (2) the defendant must have entered onto the plaintiff's land without consent or privilege; and (3) the plaintiff must show damages."[26] The element of intent does not look to the state of the mind of the actor. Intent is sufficient if entry was without justifiable case or purpose, even if accidental or by mistake.[27] Generally, the word "intrusion" is used in relation to trespass "to denote the fact that the possessor's interest in the exclusive possession of his land has been invaded by the presence of a person or thing upon it without the possessor's consent."[28]

---

[25] *But see Maryland v. Monsanto Co.*, No. 24C21005251, Transcript of Oral Argument at 52-56 (Cir. Ct. for Baltimore City, MD, May 2, 2022) (denying motion to dismiss public nuisance claim based on PCB contamination, referring to (but not citing) "courts around this country" that have allowed such actions).

[26] *Williams v. Manning*, 2009 WL 960670, at *8 (Del. Super.).

[27] *Id.*

[28] Restatement (Second) of Torts § 158, at cmt. c.

11

*Standing*

Defendants argue that the State has no standing to assert trespass. Defendants rely on *Robinson v. Oakwood Village, LLC,*[29] for the proposition that a claimant must show lawful possession of the land to establish standing. In *Robinson*, the Court of Chancery held:

> The tort of "[t]respass is a strict liability offense, the elements of which are entry onto real property without the permission of the owner." Further, as this Court has explained, "[a]ny entry on land in the peaceable possession of another is deemed a trespass whether the defendant acted intentionally or not." Prior cases in this Court involving the flow of water have found that "the instrumentality which constitutes the means for the trespass may take any intrusive form, *including water* from an improperly constructed [artificial structure]." That is, a "trespass then may be said to consist of the intrusion of water from a condition created by the [defendant] which interferes with plaintiffs' use of their property."[30]

The Court of Chancery rejected widespread trespass liability as it related to the *Robinson* defendants. The defendants participated in the creation of an improper stormwater system design, but exercised no ownership or control over the property.[31]

---

[29] 2017 WL 1548549 (Del. Ch.).
[30] *Id.* at *15 (internal citations omitted).
[31] *Id.* at 817.

Defendants further rely on *Pilots' Association for Bay & River Delaware v. Lynch.*[32] In *Pilots,* this Court found that "[o]nly a person in possession of the property may allege a trespass action."[33]

Defendants allege the State attempts to invoke *parens patriae*, in lieu of exclusive possession, in order to sue for damages in trespass to public natural resources. Defendants contend that "*parens patriae* is a 'doctrine by which a government has standing to prosecute a lawsuit on behalf of a citizen.'"[34] Thus, "a government seeking parens patriae standing must still assert all the elements of a prima facie tort case in the same manner as the citizens on whose behalf they are acting."[35]

The State contends that the Court need not evaluate *parens patriae* because the State's trespass claim is limited to lands and water in which the State has a proprietary interest. The State argues that it is merely exercising ownership rights as proprietor of lands and waters.

Defendants cite authority from several jurisdictions to argue that the State lacks the exclusive possession required for the tort of trespass.

> Land in the public trust is held by the State on behalf of a second party, the people. Such land cannot be in "exclusive possession" of

---

[32] 1992 WL 390697 (Del. Super.).
[33] *Id.* at *3.
[34] *Republic of Panama v. Am. Tobacco Co.*, 2006 WL 1933740, at *8 (Del. Super.), *aff'd sub nom. State of Sao Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116 (Del. 2007).
[35] *Id.* at *8.

the State as the interest created by the doctrine is intended to ensure that others have use of the same land. It does not grant to the State the exclusive possession of property.[36]

Defendants further argue that the State does not allege any intentional act upon a particular piece of land. Defendants assert that the State does not allege any specific source of the PCBs in Delaware apart from sites owned or operated by actors over which Defendants had no control.

The State contends Defendants were "substantially certain" that trespass would occur. The State relies on *Parks Hiway Enterprises, LLC v. CEM Leasing, Incorporated.*[37] The Alaska Supreme Court found that "actors therefore assume liability only when they 'set[ ] in motion a force which, *in the usual course of events,* will damage property of another.'"[38] Thus, the State argues that Defendants assumed liability by setting the effects of PCB in motion—by producing and selling PCBs that inevitably would be released into the environment, where they would persist, bioaccumulate, and leave a lasting toxic legacy.

However, the *Parks Hiway* Court also held that "a trespass action will exist if there is a *direct* causal relation between the conduct of the actor and the intrusion

---

[36] *New Jersey Dep't of Envtl. Prot. v. Hess Corp.*, 2020 WL 1683180, at *6 (N.J. Super. Ct. App. Div. )(internal citation omitted).
[37] 995 P.2d 657 (Alaska 2000).
[38] *Id*. at 665 (emphasis in the original).

14

of foreign matter upon the possessor's land."[39] The *Parks Hiway* court rejected the trespass argument reasoning: "As a supplier of gasoline to Gold Hill, Petroleum Sales merely performed a delivery function which, 'in the usual course of events,' would not contaminate neighboring property. The direct causal connection required to establish trespass is thus absent from the present case."[40] The "general consensus thus suggests that ownership or control of the intruding instrumentality is dispositive of an actor's trespass liability."[41]

It is undisputed that the State has ***regulatory control*** over State land and resources. However, there is no support for the proposition that the State has ***exclusive possession*** of water. Lack of exclusive possession negates the State's standing to seek damages on a trespass theory.

There is no allegation of control by Defendants of the instrumentality at the time at which the pollution occurred. Therefore, the Court finds that there can be no trespass action for contamination. Generally there must be some exercise of ownership or control over the intruding instrumentality—in this case PCBs.

The Court finds that the State has failed to state a claim for trespass under Rule 12(b)(6). The State lacks standing to bring this cause of action. The State has not alleged that Defendants had control of the PCBs at the time of the trespass.

---

[39] *Id*. at 664–65 (emphasis in the original).
[40] *Id*. at 665.
[41] *Id*. at 664.

Regulatory control does not constitute the exclusive possession or control of the property—a river in this case—necessary to demonstrate the first element of trespass.

The Court notes that this ruling does not leave the State without any remedy to address environmental change caused by PCBs to Delaware's waterways. Both the State and federal governments have broad regulatory powers. Criminal statues may apply under certain circumstances. Further, it is possible that the State may be able to bring viable claims against other defendants, for example, the entities that engaged in releasing the PCBs into the environment.

### *Unjust Enrichment*

"Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[42] In Delaware, the plaintiff must prove: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law.[43]

---

[42] *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del.)(quoting 66 Am.Jur.2d, *Restitution and Implied Contracts* § 3, p. 945 (1973)).
[43] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del.).

The State relies on *Crosse v. BCBSD, Incorporated,*[44] in which the Delaware Supreme Court established that unjust enrichment is an off-the-contract theory of recovery that accompanies breach of contract allegations. The Court reasoned:

> These off-the-contract theories of recovery are legal, not equitable claims. The Superior Court typically has jurisdiction to award this form of relief when it cannot hold the parties to a formal agreement but determines that the aggrieved party is entitled to relief for a benefit conferred on the other party.[45]

In *Crosse v. BCBSD*, the Supreme Court did not specifically find that unjust enrichment can survive as a stand-alone claim in Superior Court. Rather, the Court held that unjust enrichment can be a measure of damages, or form of relief, in a contract claim in the court of law.[46]

Superior Court lacks jurisdiction. "Unjust enrichment is not a stand-alone claim in Superior Court."[47] In Delaware, unjust enrichment is an equitable cause of action. "The claim must be brought in the Court of Chancery."[48] However, unjust enrichment may be asserted as a possible measure of damages.[49] "As a practical matter, unjust enrichment may be considered as part of damages if liability is found, but it does not survive as a standalone claim."[50] Thus, the claim

---

[44] 836 A.2d 492 (Del.).
[45] *Id.* at 496–97.
[46] *Id.*
[47] *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *14 (Del. Super.).
[48] *Id.*
[49] *Id*.
[50] *Incyte Corp. v. Flexus Biosciences, Inc*., 2017 WL 7803923, at *3 (Del. Super.).

17

for unjust enrichment only may remain in the complaint as a potential measure of damages.

The Court finds that there are no allegations within the Complaint that Defendants were "enriched." There are only allegations that Defendants retained economic benefits—such as a reduction in costs that Defendants would have incurred or will incur in the future. Specifically, the State alleges it relieved Defendants of paying for clean-up by expending taxpayer money to address the PCB contamination. There is no Delaware authority supporting the proposition that relief from future obligations amounts to a claim for unjust enrichment.

The Court finds that even if Defendants had been enriched, the unjust enrichment claim must be dismissed for lack of jurisdiction.

## CONCLUSION[51]

Consistent with *Purdue*, *Sills*, and the great weight of authority in other jurisdictions, the Court finds that the State has failed to state a claim for public nuisance. **THEREFORE**, Defendants' Motion to Dismiss the public nuisance claim is hereby **GRANTED**.

The Court finds that the State has failed to state a claim for trespass under Rule 12(b)(6). The State lacks standing. The State did not have exclusive

---

[51] The Court finds it curious that Defendants chose not to raise a statute of limitations defense in this instant motion, which would have been the most efficient way to proceed. The Court notes that sequential case-dispositive motions are disfavored.

possession or control of the property. The State has not alleged control by Defendants of the PCBs at the time the pollution occurred. Regulatory control does not constitute the exclusive possession or control of the property necessary to demonstrate the first element of trespass. **THEREFORE**, Defendants' Motion to Dismiss the trespass claim is hereby **GRANTED**.

There is no Delaware authority supporting the proposition that relief from any future contingent obligation to pay for remediation is sufficient to support a claim for unjust enrichment. Unjust enrichment is an equitable claim. The Court finds that even if the Defendants had been enriched, unjust enrichment only can remain in the Complaint as a possible measure of damages. **THEREFORE**, Defendants' Motion to Dismiss the stand-alone claim of unjust enrichment is hereby **GRANTED**.

**IT IS SO ORDERED.**

/s/ **_Mary M. Johnston_**
The Honorable Mary M. Johnston

19